National Citizen's Bank agt. Howard.

been in if the proceeding in the common pleas had never been· commenced, and the action in the supreme court alone had been brought. Would that action have unnecessarily "harassed" him? We can see no just basis for the refusal of leave to discontinue upon which any discretion was called into exercise or could operate.

The orders of the special and general terms should be re-- versed and the motion for leave to discontinue should be: granted. No costs are allowed on this appeal.

All concur, except MILLER, J., absent.

---

## NEW YORK SUPERIOR COURT.

THE NATIONAL CITIZEN'S BANK OF NEW YORK agt. GEORGE: HOWARD.

*Checks and bills — Bona fide holder — What must be shown to constitute — Agency — W;·en post-office not the agent of the person to whom negotiable paper · is sent.*

Upon a deposit being made by a depositor in a bank, in the ordinary course· of business, of money, or drafts or checks received and credited as money, the title to the money or drafts or checks is immediately vested in and. becomes the property of the bank.

It is a fraud upon a depositor for a bank or banker to permit a depositor, in reliance upon the supposed solvency of the bank, to make deposits after · it has become irretrievably insolvent, and such insolvency was known to · the bank or its agent, and upon the discovery of the fraud the depositor may rescind the contract and reclaim the check or draft deposited, unless such check or draft has come into the possession of a *bona fide* holder for · value.

A person claiming to be a *bona fide* holder of a negotiable instrument must show under what circumstances the instrument came into his possession,. and to establish his title to the instrument he must show the consideration he paid for it.

Where the defendant, late on the seventh of November, deposited the check in suit with M. & Co., bankers at Mt. Vernon, and after business hours said check was deposited by M. & Co. in the post-office, to be sent to·

plaintiff for payment of check of M. & Co., paid that day by plaintiff, on M. & Co.'s promise to make a deposit before the bank opened on the following morning.

*Held*, that plaintiff had no right to the check or its *proceeds* as against the defendant.

The mere fact that M. & Co. had promised to make good or pay any indebtedness of his to plaintiff, and that the plaintiff relied on such promise, would not be sufficient to constitute the plaintiff a *bona fide* holder for value.

The post-office was used as a messenger of M. & Co. to make the deposit, and not as the agent of the bank in receiving it.

*Special Term, April,* 1886.

*H. P. Allen* and *John L. Hill,* for plaintiff.

*Charles C. Bigelow* and *Michael H. Cardozo,* for defendant.

INGRAHAM, *J.* — The case of *Cragie* agt. *Hadley* (90 *N. Y.,* 133), disposes of two of the questions involved in this case. They are, first, that upon a deposit being made by a depositor in a bank, in the ordinary course of business, of money, or drafts or checks received and credited as money, the title to the money or drafts or checks is immediately vested in and becomes the property of the bank; and, second, that it is a fraud upon a depositor for a bank or banker to permit a depositor, in reliance upon the supposed solvency of the bank, to make deposits after it has become irretrievably insolvent, and such insolvency was known to the bank or its agent, and that upon the discovery of the fraud the depositor may rescind the contract and reclaim the check or draft deposited, unless such check or draft has come into the possession of a *bona fide* holder for value.

Applying these rules, I think the title to the check in suit passed by the deposit to Masterton & Co., subject, however, to the right of the defendant to relaim it on discovery of the fraud practiced on him, unless it had come into the possession of a *bona fide* holder for value.

It appears by the evidence that on the seventh of November Masterton & Co. was indebted in an amount exceeding in the

aggregate $100,000, with assets which have realized $26,000 or $27,000; that as early as the 4th of November, 1885, Masterton spoke of making an assignment, and on the sixth of November he asked judge GIFFORD to become the assignee. The deposit was made late in the day of the seventh of November, and in the evening of that day the assignment was made.

The acceptance of the deposit under such circumstances constitutes such a fraud as entitled the depositor to reclaim the deposit on the discovery of the fraud (*Cragie* agt. *Hadley, supra; Anonymous,* 67 *N. Y.,* 598).

The only question remaining is whether the evidence established that plaintiff became a *bona fide* holder of the check for value.

A person claiming to be a *bona fide* holder of a negotiable instrument must show under what circumstances the instrument came into his possession, and to establish his title to the instrument he must show the consideration which he paid for it (*First National Bank* agt. *Green,* 43 *N. Y.,* 301; *Ocean National Bank* agt. *Carl,* 55 *id.,* 440).

And in *McBride* agt. *The Farmers' Bank* (26 *N. Y.,* 457), it was held "that before the holder of the note can acquire a better title to it than the person from whom he received it, he must pay a present valuable consideration therefor, and that receiving it in payment of or as security for an antecedent debt it is not such a consideration. That because such a party had omitted to collect the balance due him by reason of expectation or promise of payment, he did not part with or pay any valuable consideration for the note, and if he fails to collect the note he is in no worse situation legally than he was before receiving it."

The plaintiff in this case, to sustain his claim to the check in question, must, therefore, show that he paid for the check in suit a present valuable consideration, or lost some right on the faith of the check itself. The mere fact that Masterton & Co. had promised to make good or pay an indebtedness of his to

plaintiff, and that the plaintiff relied on such promise, would not be sufficient to constitute the plaintiff, under the authorities cited above, a *bona fide* holder for value.

The facts in this case show that the check in controversy was deposited by Masterton & Co. in the post-office of Mt. Vernon after the close of business hours on the 7th of November; that prior to that time the plaintiffs had paid all the checks drawn by Masterton & Co. on it, which constituted the claim of the bank against them, and that the time had expired within which they could have returned the checks paid by them through the clearing house. Such checks had been paid relying on the promise of Masterton & Co. to make a deposit before the bank opened on the following morning, and not on the credit of any particular check. Plaintiff had no knowledge of the existence of this check in suit, or in fact that Masterson & Co. had any check on the 7th of November with which they could carry out their promise. It cannot be said under any circumstances that any title to the check passed to the bank until it was deposited in the post-office at Mt. Vernon. If Masterton & Co. had not deposited the check, plaintiff could not have recovered it from the assignee; and as it was not deposited until after the bank closed, plaintiff would be in exactly the same condition, if he fails to recover in this action, as he would have been if the check had not been sent to the plaintiff at all. It can make no difference, therefore, whether the post-office is to be considered the agent of the plaintiff or Masterton & Co.

There is a marked distinction, however, between this case and the cases cited by the plaintiff, holding that the post-office was the agent of the person to whom a paper had been sent. As it appears here, the post-office was used as a messenger of Masterton & Co. to make the deposit, and not as the agent of the bank in receiving it, it could hardly be claimed under the circumstances in this case that if the check had been lost in the course of its transmission from Mt. Vernon to New York that

the plaintiff would suffer, and yet that would be the result if the deposit in the mail was a delivery to the plaintiff.

The state of the account between plaintiff and Masterton & Co., at the close of business on the 7th of November, was an indebtedness of Masterton & Co. to the plaintiff which Masterton & Co. had promised to pay by a deposit before the opening of the bank on the 8th, and the delivery by Masterton & Co. of the check in payment of such an indebtedness and in pursuance of such promise did not make the plaintiff a *bona fide* holder for value of the check delivered to them.

It follows, therefore, that the plaintiff had no right to the check or its proceeds against the defendant, and the defendant is entitled to judgment, with costs.